# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| PRISCILLA JIBOWU, Individually and on Behalf of All Other Persons Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:17-cv-03875 (PKC)(CLP) |
| v. | ) ) ) | |
| TARGET CORPORATION and TARGET CORPORATION OF MINNESOTA, | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR NOTICE AND CONDITIONAL CERTIFICATION

Seth R. Lesser
Fran L. Rudich
Christopher M. Timmel
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Tel: (914) 934-9200

Marc S. Hepworth
Charlie Gershbaum
David A. Roth
Rebecca S. Predovan
Janine Kapp
HEPWORTH GERSHBAUM & ROTH, PLLC
192 Lexington Avenue, Suite 802
New York, NY 10016
Tel: (212) 545-1199

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 2

STATEMENT OF FACTS .............................................................................................. 3

    I.    The Parties ................................................................................................... 3

    II.   The Deposition Testimony and the Documentary Evidence Demonstrate that
    ETLs are Similarly Situated........................................................................ 4

        a.    The Duties and Responsibilities are the Same for All ETLs ...................... 5

        b.    The Classification and Method of Compensation is the Same for All
        ETLs........................................................................................................... 6

        c.    ETLs Operate Pursuant to the Same Corporately Derived Policies and
        Practices .................................................................................................... 7

        d.    Defendants Create Uniform Training for ETLs.......................................... 8

ARGUMENT .................................................................................................................. 9

    I.    Court-Authorized Notice is Fair, Efficient, and Advances the FLSA's Goals....... 9

    II.   Expeditious Notice is Necessary to Preserve the Rights of ETLs. ...................... 10

    III.  Plaintiffs More Than Meet the Low Burden for Issuing Notice ........................... 11

        a.    Plaintiffs Face a Low Standard of Proof at the Notice Stage ................... 12

    IV.  The Court Should Facilitate Notice ..................................................................... 20

        a.    Plaintiffs' Proposed Notice is Timely, Accurate, and Informative........... 20

        b.    The Notice Should Be Sent to All ETLs Who Worked Within Three
        Years of the Filing of the Complaint ....................................................... 21

        c.    The Court Should Order Target to Produce Contact Information for  the
        Collective ................................................................................................. 22

CONCLUSION................................................................................................................ 25

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Ack v. Manhattan Beer Distribs.*,
    2012 U.S. Dist. LEXIS 67883 (E.D.N.Y. May 15, 2012) ............................................... 23

*Alli v. Boston Market Corp.*,
    2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) ............................................ 17

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
    2015 U.S. Dist. LEXIS 90616 (S.D.N.Y. July 13, 2015) ............................................ 24

*Braunstein v. Eastern Photographic Laboratories, Inc.*,
    600 F.2d 335 (2d Cir. 1978) ................................................................... 10

*Cano v. Four M Food Corp.*,
    2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009) ................................................... 18

*Chen v. XpressSpa at Term. 4 JFK, LLC*,
    2106 U.S. Dist. LEXIS 20003 (E.D.N.Y. February 16, 2016) ................................. 11, 22

*Chhab v. Darden Rests., Inc.*,
    2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept. 19, 2013) ........................................... 25

*Craig v. Rite Aid Corp.*,
    2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) ............................................. 17

*Creely v. HCR Manorcare*,
    2011 U.S. Dist. LEXIS 61376 (N.D. Ohio June 9, 2011) ............................................. 12

*Cunningham v. Elec. Data Sys. Corp.*,
    754 F. Supp. 2d 638 (S.D.N.Y. 2010) .............................................................. 15

*Damassia v. Duane Reade, Inc.*,
    2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) .......................................... 13, 18

*Dempsey v. Jason's Premier Pumping Services, LLC*,
    2015 U.S. Dist. LEXIS 187322 (D. Colo. Nov. 11, 2015) ............................................. 24

*Eley v. Stadium Grp., LLC*,
    2015 U.S. Dist. LEXIS 126184 (D.D.C. Sept. 22, 2015) ............................................. 24

*Ferreira v. Modell's Sporting Goods, Inc.*,
    2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) ....................................... 16, 19

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 101 (S.D.N.Y. 2003) ...................................................................... 13, 15

*Glatt v. Fox Searchlight Pictures, Inc.*,
811 F.3d 528 (2d. Cir. 2015) ................................................................................... 1

*Glatt v. Fox Searchlight Pictures, Inc.*,
2013 U.S. Dist. LEXIS 121964 (S.D.N.Y. Aug. 26, 2013) ............................... 22

*Goodman v. Burlington Coat Factory*,
2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) .................................... 16

*Gortat v. Capala Brothers, Inc.*,
2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010) .................................... 11, 15, 16

*Guillen v. Marshalls*,
841 F. Supp. 2d 469 (S.D.N.Y. 2010) ................................................................. 20

*Guttentag v. Ruby Tuesday Inc.*,
2013 U.S. Dist. LEXIS 82350 (S.D.N.Y. June 11, 2013) ................................. 15

*Hamadou v. Hess Corp.*,
915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................................. 23

*Heitzenrater v. Officemax, Inc.*,
2014 U.S. Dist. LEXIS 13823 (W.D.N.Y. 2014) ............................................. 16

*Hoffman-La Roche v. Sperling*,
493 U.S. 165 (1989) ............................................................................................ 10, 11, 20, 23

*Hoffmann v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997) ..................................................................... 13, 18

*Ibea v. Rite Aid Corp.*,
2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011) .............................. 15, 20

*Indergit v. Rite Aid Corp.*,
2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 5, 2012) .................................. 16, 19, 20

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
132 F.Supp.3d 707 (D.S.C. 2015) ...................................................................... 24

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................ 22

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) ................................................................. 17

*Jacob v. Duane Reade, Inc.*,
    2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012) .................................... 13, 16, 18

*Jason v. Falcon Data Com., Inc.*,
    2011 U.S. Dist. LEXIS 77352 (E.D.N.Y. July 18, 2011) ................................. 18

*Kemper v. Westbury Operating Corp.*,
    2012 U.S. Dist. LEXIS 149682 (E.D.N.Y. Oct. 17, 2012) ................................ 22

*Landry v. Swire Oilfield Servs.*,
    252 F. Supp. 3d 1079 (D.N.M. May 2, 2017) ................................................. 24

*Laroque v. Domino's Pizza, LLC*,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) ......................................................... 18

*Limarvin v. Edo Rest. Corp.*,
    2013 U.S. Dist. LEXIS 22431 (S.D.N.Y. Jan. 21, 2013) ................................. 25

*Lin v. Everyday Beauty Amore, Inc.*
    2018 U.S. Dist. LEXIS 207988 (E.D.N.Y. Dec. 12, 2018) .............................. 25

*Lloyd v. J.P. Morgan Chase & Co.*,
    2013 U.S. Dist. LEXIS 129102 (S.D.N.Y. Sept. 9, 2013) .............................. 20

*Lora v. To-Rise, LLC*,
    2017 U.S. Dist. LEXIS 112644 (E.D.N.Y. July 18, 2017) ......................... 12, 21

*Lynch v. United Service Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ......................................................... 14

*Marin v. Apple-Metro, Inc.*,
    2014 U.S. Dist. LEXIS 185238 (E.D.N.Y. July 29, 2014) .............................. 10

*Martin v. Sprint/united Mgmt. Co.*,
    2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016) ...................................... 24

*McEarchen v. Urban Outfitters, Inc.*,
    2014 U.S. Dist. LEXIS 76937 (E.D.N.Y. June 3, 2014) ................................. 14

*McKee v. PetSmart, Inc.*,
    2013 U.S. Dist. LEXIS 174123 (D. Del. Dec. 9, 2013) ................................. 16

*Morris v. Lettire Constr. Corp.*,
    896 F. Supp. 2d 265 (S.D.N.Y. 2012) ....................................................... 23, 25

*Muhtarov v. Mesivita of Long Beach*,
    2015 U.S. Dist. LEXIS 138324 (E.D.N.Y. Oct. 9, 2015) ................................ 22

*Myers v. The Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ................................................................ *passim*

*Parks v. Dick's Sporting Goods, Inc.*,
    2007 U.S. Dist. LEXIS 20949 at *9-10 (W.D.N.Y. Mar. 21, 2007) ........................ 16, 17

*Patton v. Thompson Corp.*,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ............................................................ 10

*Pippins v. KPMG LLP*,
    2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ................................ 20, 23

*Puglisi v. TD Bank, N.A.*,
    998 F. Supp.2d 95 (E.D.N.Y. 2014) ....................................................... 23, 25

*Qazi v. Stage Stores, Inc.*,
    2019 U.S. Dist. LEXIS 102363 (S.D. Tex. June 18, 2019) ............................ 24

*Raimundi v. Astellas US LLC*,
    2011 U.S. Dist. LEXIS 124484 (S.D.N.Y. Oct. 27, 2011) ............................ 13

*Raniere v. Citigroup, Inc.*,
    2011 U.S. Dist. LEXIS 135393 (S.D.N.Y. Nov. 22, 2011) ............................ 15

*Ravenell v. Avis Budget Car Rental, LLC*,
    2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010) ............................ 15, 16, 18, 19

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) ............................................................ 14

*Regan v. City of Hanahan*,
    2017 U.S. Dist. LEXIS 58678 (D.S.C. Apr. 17, 2017) ................................ 24

*Roberts v. TJX Cos.*,
    2018 U.S. Dist. LEXIS 49174 (D. Mass. March 17, 2017) ............................ 16

*Robles v. Liberty Rest. Supply*,
    2013 U.S. Dist. LEXIS 177922 (E.D.N.Y. Dec. 18, 2013) ............................ 22

*Schear v. Food Scope Am., Inc.*,
　　297 F.R.D. 114 (S.D.N.Y. 2014) .................................................................. 23

*Schucker v. Flowers Foods, Inc.*,
　　2017 U.S. Dist. LEXIS 136178 (S.D.N.Y. August 24, 2017) .................................... 13, 15

*Sexton v. Franklin First Fin. Ltd.*,
　　2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009) .............................. 12

*Sharma v. Burberry Ltd.*,
　　52 F. Supp. 3d 443 (E.D.N.Y. 2014) .......................................... 25

*Sierra v. Spring Scaffolding LLC*,
　　2015 U.S. Dist. LEXIS 178006 (E.D.N.Y. Sept. 30, 2015) ........................... 25

*Stevens v. HMSHost Corp.*,
　　10-cv-03571, slip op. (E.D.N.Y June 15, 2012) ........................... 14

*Stevens v. HMSHost Corp.*,
　　2012 U.S. Dist. LEXIS 146150 (E.D.N.Y. Oct. 10, 2012) ....................... 16, 17

*Stillman v. Staples*,
　　2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) ................................ 17

*Sukhnandan v. Royal Health Care of Long Island LLC*,
　　2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) ........................... 25

*Tello v. A.N.G. Diner Corp.*,
　　2018 U.S. Dist. LEXIS 22702 (E.D.N.Y. Feb. 12, 2018) ................................ 9, 11, 12, 21

*Valerio v. RNC Indus., LLC*,
　　314 F.R.D. (E.D.N.Y. 2016) ..................................................... 21, 23

*Vasto v. Credico (USA) LLC*,
　　2016 U.S. Dist. LEXIS 60158 (S.D.N.Y. May 5, 2016) ................................ 24

*Wang v. Empire State Auto Corp.*,
　　2015 U.S. Dist. LEXIS 99089 (E.D.N.Y. June 29, 2015) ................................ 21

*Weston v. TechSol, LLC*,
　　2018 U.S. Dist. LEXIS 166574 (E.D.N.Y. Sept. 26, 2018) ........................ 11, 12

*Winfield v. Citibank, N.A.*,
　　2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. Jan. 27, 2012) ................................ 12

*Youngblood v. Family Dollar Stores, Inc.*,
    2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011) ................................................ 17

*Zaniewski v. PRRC Inc.*,
    848 F. Supp. 2d 213 (D. Conn. 2012) ....................................................................... 17, 19

*Zivali v. AT&T Mobility LLC*,
    646 F. Supp. 2d 658 (S.D.N.Y. 2009) .............................................................................. 15

## Codes, Statutes, and Rules

29 U.S.C. § 216 ................................................................................................................ *passim*

29 U.S.C. § 256 ......................................................................................................................10

Fed. R. Civ. P. 23 ........................................................................................................... 10, 17

Fed. R. Civ. P. 30 ........................................................................................................ 2, 17, 20

Fed. R. Civ. P. 68 .................................................................................................................... 2

## Secondary Sources

*Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage*
    *Law Enforcement in the Federal Courts*,
    29 Berkeley J. Emp. & Lab. L. 269 (2008) ..................................................................... 24

## <u>INTRODUCTION</u>

Plaintiff Priscilla Jibowu and the Opt-in Plaintiffs (collectively "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Notice and Conditional Certification pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of certain specified current and former Executive Team Leaders ("ETLs"), specifically Food ETLs, Sales Floor ETLs, Softlines ETLs, Hardlines ETLs, Guest Experience ETLs, Replenishment ETLs, and Logistics ETLs in stores that do not have Replenishment ETLs,[1] employed by Defendants Target Corporation and Target Corporation of Minnesota (together, "Target" or "Defendants"), at any store location within the United States, and at any time from June 28, 2014 to the present (the "Collective Action Period").

ETLs work under Defendants' common employment policy, under which they routinely work over 40 hours a week and perform non-exempt labor identical to the work performed by hourly employees, but are uniformly classified by Defendants as exempt – thereby ensuring that ETLs do not receive overtime wages. This motion should be granted so that other current and former ETLs will be notified of the existence of this lawsuit and to provide them the opportunity to join if they believe they have similar claims, which is the paramount purpose of FLSA notice and conditional certification. Such an Order would be consistent with the overwhelming precedent in both this Court and this Circuit granting conditional certification motions where, as here, Plaintiffs have made the "modest factual showing" required to meet the "lenient burden." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d. Cir. 2015) (*citing Myers v. The Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)).

---

[1] The Complaint here was brought on behalf of all ETLs, generally. However, as a result of the discovery, Plaintiffs are now just moving on behalf of those here specified and not all ETLs. References to "ETLs" herein only reference these specific ETL types which would be members of the putative collective.

1

**PROCEDURAL HISTORY**

This case was filed on June 28, 2017 against Target Corporation and Target Corporation of Minnesota (together, "Target" or "Defendants") alleging violations of the FLSA and Illinois and New York state wage and hour law. *See* Complaint (ECF Doc. 1). Seven other individuals who worked as ETLs during the Collective Action Period have joined as Opt-in Plaintiffs.[2] Notably, this is the second lawsuit commenced by the below attorneys against Target for these ETL misclassification claims – in a prior case, in the District of New Jersey, Target bought off all the named and opt-in Plaintiffs through offers of judgment. *Locicero et al v. Target Corp., et al.*, Case No. 16-cv-5592 (D.N.J.).

Pursuant to FLSA practice, discovery was bifurcated into two stages. The now completed first stage was directed solely to the issue of whether ETLs are "similarly situated" under the FLSA in order to determine whether notice and the option to join should be sent to eligible ETLs. Based upon the record, which consists of the deposition testimony of Ms. Jibowu and Opt-in Plaintiffs Bleem, Spagnolo, Wood, and Wolfe, the 30(b)(6) deposition testimony of Defendants' corporate designee Michael Brewer, the declarations of Opt-in Plaintiffs Isais and Steckler, written discovery responses, and documents received in production, it is undeniable – indeed, was in fact not denied by Defendants' corporate Rule 30(b)(6) representative – that the ETL position is defined by a common set of roles and expectations across all of Target's stores, that ETLs are uniformly classified as exempt, that ETLs are uniformly paid on a salary basis, that ETLs are uniformly denied overtime pay, that ETLs are subject to the same, corporately-derived procedures and policies, and that ETLs receive identical training (see pp. 4-9, infra).

---

[2] The seven opt-in plaintiffs are Nathan Wood, Nickolas Wolfe, Ashley Bleem, Philip Spagnolo, Kimberly Steckler, Brielle Engeran and Isaura Isais. *See* ECF Nos. 6, 26, 27, and 62. An eighth opt-in plaintiff, Kevin West, accepted a Rule 68 Offer of Judgment from Defendants and is no longer a part of the collective. *See* ECF No. 64.

## STATEMENT OF FACTS

### I.      The Parties

Defendant Target Corporation is a corporation, organized and existing under the laws of Minnesota, with its corporate headquarters at 1000 Nicollet Mall, Minneapolis, Minnesota. Complaint ¶ 12. Defendant Target Corporation of Minnesota is a corporation, organized and existing under the laws of Minnesota, with its corporate headquarters at 1000 Nicollet Mall, Minneapolis, Minnesota. Complaint ¶ 13.

Plaintiff Jibowu is now a resident of Fort Worth, TX, having moved there during the lawsuit from Brooklyn. *See* Ex. 1 (Excerpts of the Deposition Testimony of Priscilla Jibowu) ("Jibowu Tr.") at 7.[3] She worked as a Replenishment ETL in Chicago from July 2010 to July 31, 2016, and as a Sales Floor ETL in Bronx, NY from August 1, 2016 to October, 2017. *Id.* at 196; Complaint ¶ 9. The other Opt-In Plaintiffs worked as ETLs in various Target stores as follows:

| Name | Dates of Employment | ETL Positions | Store Locations |
|---|---|---|---|
| Ashley Bleem | June 2012 – September 2016 | Food<br>Sales Floor<br>Guest Experience | Edmond, OK<br>Norman, OK |
| Brielle Engeran | October 2011 – October 2014 | Logistics | Covington, LA |
| Isaura Isais | November 2007 – April 2019 | Guest Experience<br>Softlines<br>Sales Floor | Eastville, CA<br>Fullerton, CA |
| Philip Spagnolo | October 2013 - December 2014 | Sales Floor<br>Guest Experience | Sandusky, OH<br>Macedonia, OH |

---

[3] Exhibit 1; excerpts of Ms. Jibowu's deposition testimony are attached to the accompanying Declaration of Fran L. Rudich ("Rudich Decl.") (attached hereto as Exhibit A). Excerpts from Opt-in Plaintiff depositions or declarations from will be cited in the form of "Deponent last name] Tr. [or] Decl." All numbered exhibits (Exs. 1 - 19) are attached to the Rudich Declaration.

| Kimberly Steckler | June 2001 – September 2015 | Softlines Guest Experience Sales Floor | Erie, PA Scranton, PA Fairfield, OH South Lebanon, OH |
|---|---|---|---|
| Nickolas Wolfe | October 2012 – August 2015 | Hardlines Softlines Sales Floor Guest Experience | Richardson, TX |
| Nathan Wood | 2000 – Oct. 2016 | Food Hardlines Sales Floor | Rowlett, TX Richardson, TX Garland, TX Mesquite, TX |

Altogether, Plaintiffs worked, full-time, in 18 Target different stores, in eight different states, across the country. *See* Ex. 2 ("Bleem Tr.") at 58-59; Ex. 3 ("Isais Decl.") at ¶¶ 2-3; Ex. 4 ("Spagnolo Tr.") at 27, 37, 86; Ex. 5 ("Steckler Decl.") at ¶ 1; Ex. 6 ("Wood Tr.") at 16, 431-32; Ex. 7 ("Wolfe Tr.") at 47-48, 52, 69.

## II.     The Deposition Testimony and the Documentary Evidence Demonstrate that ETLs are Similarly Situated

In discovery, Target conceded the critical facts that warrant granting Plaintiffs' motion. Target's 30(b)(6) designee testified that all ETLs are defined by a common set of roles and expectations nationwide (identified by Target on a single, common document), that Target has uniform job requirements for the ETL position (identified by Target on a single, common document), that Target has uniform "leadership expectations" for all ETLs nationwide (identified by Target on a single, common document), that all ETLs are uniformly classified as exempt nationwide, that all ETLs are paid on a salary basis nationwide, that all ETLs are subject to the same, corporately-derived procedures and policies, nationwide, and that all ETLs receive the same, uniform training, nationwide. In other words, it does not matter where in America Target's ETL's work – they are all governed by the same employment rules, policies, and classification

4

(and do not get paid overtime). That is, under this Circuit's case law sufficient to warrant granting the motion, *see* pp. 9-20, *infra*. But, as discussed below, there is more.

### a.  The Duties and Responsibilities are the Same for All ETLs

Defendants' 30(b)(6) Designee Michael Brewer testified that the "core roles and expectations" of the ETL job are the same nationwide. *See* Ex. 8 (Excerpts of Deposition Testimony of Defendants' 30(b)(6) Designee Michael Brewer) ("Brewer Tr.") at 59; *see also* Ex. 9 (ETL job description, listing over 50 bullet points describing the "Executive Team Leader Common Role") at 1- 2. Mr. Brewer agrees that Exhibit 10 is aptly described as a "job description" for the ETL position, and that the dozens of common roles and expectations it lists apply to all ETLs nationwide, regardless of store size, store sales volume, store location, or type of ETL. Ex. 8 (Brewer Tr.) at 74.

Similarly, Target concedes that the job requirements for the ETL position are the same for all ETLs. *See* Ex. 8 (Brewer Tr.) at 77-79. Target identifies, *inter alia*, these job requirements as common to all ETLs, nationwide:

- able to place and arrange items on all shelves and racks on the sales floor;
- able to climb and descend ladders carrying merchandise;
- able to lift 40 pounds;
- able to continually move around all areas of the store on a daily basis; able to read instructions, reports, and information on computer screens and to key information on computer and PDA keyboards;
- able to handle all products sold by Target; and
- a flexible work schedule (e.g., nights, weekends, holidays, long hours).

Exhibit 3 at 9.

Furthermore, Target has identical "Leadership Expectations" for all ETLs. See Ex. 10 ("Proficiency Levels for Stores Core Career Path – Leadership Expectations"). Exhibit 11

identifies Target's "leadership expectations" for ETLs across a number of categories, including resiliency and adaptability, accountability, collaboration, communication, *etc*. Putting aside Plaintiffs' testimony that the ETL position demands little by way of "leadership," of consequence for the present motion is that the "leadership expectations" that Target sets for ETLs in each of these categories are identical, and they do not change based on any variance in store location, store type, store size, store volume, or ETL type. As Mr. Brewer agrees, these expectations are the same for all ETLs nationwide. Ex. 8 (Brewer Tr.) at 134-136.

Finally, and although it pertains to the merits of Plaintiffs' claims, which is a second-stage (not first-stage) determination, all the Plaintiffs, regardless of where they worked, or the type or size of Target store they worked in, or the ETL role they performed, testified that they routinely worked more than 40 hours a week and spent the majority of their time performing the same manual labor as hourly employees. *See, e.g.*, Ex. 1 ("Jibowu Tr.) at 372, 386-398; Ex. 2 ("Bleem Tr.") at 354-62; Ex. 3 ("Isais Decl.") at ¶¶ 4, 7; Ex. 4 ("Spagnolo Tr.") at 279-288; Ex. 5 ("Steckler Decl.") at ¶¶ 2, 9; Ex. 6 ("Wood Tr.") at 435-39; Ex. 7 ("Wolfe Tr.") at 346-351.

**b.**    **The Classification and Method of Compensation is the Same for All ETLs**

ETLs are all classified as exempt in all Target stores nationwide and, in every respect that matters, Target treats its ETLs the same. *See* Ex. 8 (Brewer Tr.) at 52-53. ETLs are classified as exempt regardless of the store location, the store size, the store's sales volume, the ETL's level of experience, the number of store employees, or the time of day the ETL works. *Id.* at 53-55, 63-64, 86. Mr. Brewer testified: "if an ETL position is assigned to a store, it is always exempt." *Id.* at 64. ETLs are classified as exempt regardless of ETL type. *Id.* at 64-65. Specifically, all Logistics, Food, Sales Floor, Softlines, Hardlines, Guest Experience, and Replenishment ETLs, are uniformly classified by Target as exempt and paid on a salary basis. *Id.* at 86.

6

Additionally, in each instance that Target has surveyed the ETL position, it used the exact same criteria to survey every ETL position for which Plaintiffs are seeking conditional certification. Ex. 8 (Brewer Tr.) at 159-160, 162. Necessarily, it is clear that Target views the ETLs positions as coextensive in terms of fundamental attributes.

### c. ETLs Operate Pursuant to the Same Corporately Derived Policies and Practices

All ETLs are subject to the same corporately derived policies and practices, as disseminated in a single common handbook. *See* Ex. 8 (Brewer Tr.) at 89-90; Ex. 11 (Team Member Handbook). All ETLs are uniformly subject, for example, to Target's workplace policies regarding harassment, complaints, drug and alcohol use, performance reviews, and safety. Ex. 11 at 5-7.

All ETLs, regardless of store size, volume, or location, receive the same benefits package. Ex. 8 (Brewer Tr.) at 184-186; Ex. 11 at 27-32. All are equally eligible to receive bonuses, to receive health insurance, to participate in Target's 401(k) retirement plan, to receive paid vacation leave and paid sick leave. *Id.*

All Target stores have a single manager called the Store Team Leader ("STL"); the STL is the highest-ranking employee within any Target store. *Id.* at 43. All ETLs nationwide report to their store's STL. *Id.* Target stores are operated and maintained according to common routines and standards, to which all ETLs must adhere. *Id.* at 128-130. For instance, all Target stores have a common "closing checklist" which guides and directs all ETLs, step by step, in the correct procedure for closing a Target store. *Id.*; *see* Ex. 12 ("LOD Closing Checklist").[4] There is a corresponding opening checklist. *Id.* at 130. Both checklists are used at all Target stores

---

[4] "LOD" means "Leader on Duty," and refers to the highest level individual in the store when the STL – Store Team Leader – is not in the store. The LOD could be an hourly employee as well an ETL. Ex. 8 (Brewer Tr.) at 128.

nationwide. *Id.* at 132-133. To ensure a "consistent appearance" across their hundreds of stores, Target provides employees, including ETLs, with common instructions on how to maintain and organize product in their stores. *Id.* at 141. For instance, the "b.a.s.i.c.s Tool Kit" (Ex. 13) provides detailed guidance on how store employees are to maintain a "similar look, feel, and flow" across all Target stores.  Ex. 8 (Brewer Tr.) at 136-142; Ex. 13 at 2. To further ensure consistency, Target also uses "planograms," which provide shelf-by-shelf instruction on how to display products. Ex. 8 (Brewer Tr.) at 140-141. These are used at all Target stores nationwide. *Id.* All ETLs are obliged to adhere to these common policies and procedures.

Target communicates common policy information to ETLs through company intranet systems (such as "Workbench") and through in-store e-mail accounts (such as the "Redwire"). Ex. 8 (Brewer Tr.) at 91-93. The information on Workbench is available to all ETLs, and "is primarily where ETLs would look for information" about the position, including store reports, information about upcoming sales, planograms, and the ETL handbook. *Id.* at 93, 156-57.

Labor Budgets for all individual Target stores are centrally determined by Target and are set by the corporate finance department. *Id.* at 187-188. An ETL plays no role in setting her store's labor budget. *Id.* Furthermore, as a corporate practice common to all Target stores, paying overtime to hourly employees is discouraged (Target stores are expected to "avoid, whenever possible, the use of overtime"). *Id.* at 193.

### d.    Defendants Create Uniform Training for ETLs

All newly-hired ETLs are required to attend a uniform, six-week "Business College." Ex. 8 (Brewer Tr.) at 94-109; Ex. 14 (Target's Business College "Welcome" Manual). The goal of the Business College is to teach ETLs about Target's expectations for the performance of the ETL job, which are the same for all ETLs in all Target stores nationwide. Ex. 8 (Brewer Tr.) at

108-109. Attendance at the Business College is mandatory for all first-time ETLs, even if the hire was previously a Target employee in another position, or had significant relevant retail experience working elsewhere before being hired by Target. *Id*.

The documents and materials used for training ETLs at Business College are the same for all ETLs nationwide. *Id*. at 95-96. The six-week Business College program is identical for all ETLs regardless of whether trainees later became, for instance, softlines ETLs, or replenishment ETLs, or food ETLs. *Id*. During the Business College, all ETLs are paid on an hourly basis. *Id*. at 97. To ensure further that ETL training is uniform and consistent, Target also prepares a "Facilitator Guide," provided to Business College trainers for ETLs. *Id*. at 110-113; *see* Ex. 15.The Facilitator Guide is another measure taken by Target to ensure uniform ETL training, and includes scripts that Facilitators are to read aloud *verbatim* during parts of the training program. *Id*. at 112. The "Facilitator Guide" is the same nationwide. *Id*. at 110.

During and subsequent to Business College, ETLs may also take "e-learning" online courses that they can access through Workbench. *Id*. at 132. All online courses available to ETLs are the same nationwide. *Id*.

## ARGUMENT

### I.   Court-Authorized Notice is Fair, Efficient, and Advances the FLSA's Goals

The collective action mechanism is established by FLSA Section 16(b) permitting actions to be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). Pursuant to Section 16(b), an employee may bring an action to "recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions." *Tello v. A.N.G. Diner Corp.*, 2018 U.S. Dist. LEXIS 22702, *7-8 (E.D.N.Y. Feb. 12, 2018) (Pollak, M.J.) (quotation omitted). Unlike a

class action under Fed. R. Civ. P. 23, a collective action brought under the FLSA may be brought only on behalf of those employees who affirmatively "opt-in" by giving consent in writing to become a party to the action. *See Patton v. Thompson Corp.*, 364 F. Supp. 2d 263, 266-67 (E.D.N.Y. 2005).

A collective action provides plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources," and furthers the FLSA's "broad remedial purpose." *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989); *see also Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978). District courts therefore have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche* at 170-171. Consistent with this managerial responsibility, district courts often facilitate the notice and joinder process by "conditionally certifying" the lawsuit, thereby enabling other current and former employees to be notified of its existence. *See, e.g., Myers*, 624 F.3d at 554; *Marin v. Apple-Metro, Inc.*, 2014 U.S. Dist. LEXIS 185238, *16-17 (E.D.N.Y. July 29, 2014).

## II.    Expeditious Notice is Necessary to Preserve the Rights of ETLs.

Unlike Rule 23 class actions, the commencement of an FLSA collective action under Section 216(b) does not toll the running of the applicable statute of limitations period for the putative class members. 29 U.S.C. § 256(b). As such, time is of the essence for the potential opt-ins, and as explained by the United States Supreme Court:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some time later…
>
> The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the

> parties and the court benefit from settling disputes about the content of the notice
> before it is distributed.

*Hoffman-La Roche*, 493 U.S. at 171-72 (internal citations omitted); *see also, e.g., Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451, at *30 (E.D.N.Y. Apr. 9, 2010) ("early certification and notice are favored in order to protect plaintiffs' rights").

Notice, in short, is designed to allow other employees who believe they have similar claims to those already in a case to learn of the existence of the lawsuit and the claims asserted and to provide them with the chance to join. And the undersigned attorneys – whom have litigated a very large number of such cases in this Court, as well as in the Circuit and across the country – can represent based on extensive experience, that approximately 15-20% of potential collective action members typically might join a mid-level managerial chain misclassification case. At the second stage, the issue is then to determine whether those individuals are, in fact, similarly situated. *See* cases cited at pp. 12-20, below.

## III.   **Plaintiffs More Than Meet the Low Burden for Issuing Notice**

In *Myers v. Hertz Corp.*, the Second Circuit adopted the common two-stage process for FLSA collective actions. 624 F.3d at 554-55. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether an FLSA violation has occurred." *Id.* at 555. This determination is "typically 'based on the pleadings, affidavits and declarations' submitted by the plaintiffs." *Tello*, 2018 U.S. Dist. LEXIS 22702 at *20; *Chen v. XpressSpa at Term. 4 JFK, LLC*, 2106 U.S. Dist. LEXIS 20003, *11 (E.D.N.Y. February 16, 2016) (citation omitted); *Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, *6-7 (E.D.N.Y. Sept. 26, 2018). Further, "the law in this Circuit is clear that the proper inquiry at this stage is whether *plaintiff* has made the

requisite showing, without reference to what defendant may have sought to inject into the record." *Tello*, 2018 U.S. Dist. LEXIS at \*13.[5]

### a.   Plaintiffs Face a Low Standard of Proof at the Notice Stage

The evidentiary standard for deciding whether to authorize notice under 29 U.S.C. § 216(b) is "lenient," and requires "only a 'modest factual showing' that plaintiffs and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Lora v. To-Rise, LLC*, 2017 U.S. Dist. LEXIS 112644, \*6-7 (E.D.N.Y. July 18, 2017) (*quoting Myers*, 624 F.3d at 554-55) (Tiscione, M.J.). The standard of proof is low "because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist…. Participants in a potential collective action need not have held identical jobs or been subject to identical treatment; rather, conditional certification is appropriate where all putative class members are employees of the same enterprise and they allege the same types of FLSA violations." *Sexton v. Franklin First Fin. Ltd.*, 2009 U.S. Dist. LEXIS 50526, \*9 (E.D.N.Y. June 16, 2009) (citations omitted) (Bianco, J.).

At the notice stage, therefore, the court "does not resolve factual disputes or make factual determinations" *Weston*, 2018 U.S. Dist. LEXIS 166574 at \*7. The merits of the claim – namely,

---

[5] Target might attempt to argue that other ELTs do different work than those in the case presently by submitting declarations from current employees. But, "'[d]eclarations submitted by employers of current employees are regularly disregarded in the context of *conditional certification* of a collective action, both because of the chance of coercion by the employer, but also because the evidentiary burden is relatively low.'" *Tello*, 2018 U.S. Dist. LEXIS at \*13-14 (quoting *Benavides v. Serenity Spa NY Inc*., 2017 U.S. Dist. LEXIS 142137, \*12-18 (S.D.N.Y. Sep. 1, 2017)); *accord Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449, at \*25 n.6 (S.D.N.Y. Jan. 27, 2012) ("courts in this Circuit regularly conclude that [defendant's] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Jacob v. Duane Reade, Inc.,* 2012 U.S. Dist. LEXIS 11053, \*22 (S.D.N.Y. Jan. 27, 2012) ("In an attempt to demonstrate the diversity of ASMs' job functions, Defendants have submitted deposition testimony and declarations from current employees. The Court, however, declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation.") (citation omitted); *Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376, at \*62-63 (N.D. Ohio June 9, 2011) (dismissing 35 "happy camper" declarations submitted by defendant as "of little use" on a Section 216(b) motion).

that Defendants' classification is wrong because the putative collective action members' primary duties are not managerial – is a determination that is not now before this Court. *See, e.g. Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, at *15 (S.D.N.Y. October 5, 2006) ("courts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice"); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (merits of the case are irrelevant to the "similarly situated" test) (Sotomayor, J.); *Schucker v. Flowers Foods, Inc.*, 2017 U.S. Dist. LEXIS 136178, *7 (S.D.N.Y. August 24, 2017) (court "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated) (citations omitted).

The burden of demonstrating that potential plaintiffs are similarly situated is therefore low at this notice stage. Indeed, although the plaintiff bears the burden of producing a:

> modest factual showing that the plaintiff and the potential plaintiffs were victims of a common policy or plan violating the FLSA, it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy.

*Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 104 (internal quotation marks omitted); *Raimundi v. Astellas US LLC*, 2011 U.S. Dist. LEXIS 124484, at *2-3 (S.D.N.Y. Oct. 27, 2011) (conditionally certifying a collective action based upon evidence of the same job description and same exempt classification).

All that Plaintiff is required to show at this initial conditional stage is that Defendants had a corporate policy of not paying overtime as part of what now-Circuit Judge Lynch termed in the *Damassia* case, a "uniform business practice." *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *18. Or, as now-Justice Sotomayor similarly wrote, all an employee need make is "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a

13

common policy or plan that violated the law." *Realite v. Ark Rests. Corp*., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). "At the preliminary notice stage, 'plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme.'" *Id.*; *accord Myers v. Hertz*, 624 F.3d at 555. In fact, in one similar nationwide case in this Court also brought on behalf of mid-managers against another retail chain store, Judge Orenstein certified the case for notice and conditional collective action certification, based *solely* on the complaint and counsel's admissions at the first case conference that the company classified all of the assistant store managers as exempt pursuant to the same policies. *McEarchen v. Urban Outfitters, Inc.*, 2014 U.S. Dist. LEXIS 76937 (E.D.N.Y. June 3, 2014); *accord Lora,* U.S. Dist. LEXIS 112644 at *19 (to ascertain whether plaintiffs are similarly situated, district courts simply examine whether "[plaintiffs] and other employees have similar positions, job requirements, pay provisions, and the like" and have a "factual nexus" that "binds them as victims of a particular practice.").

Similarly, in yet another retail chain misclassification case, Judge Pohorelsky explained: "The defendants have admitted that they classify all [assistant managers] exempt and do not decide the exemption on a case-by-case basis. This admitted common policy, combined with the allegations and testimony of the plaintiffs here, is enough to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Stevens v. HMSHost Corp.,* 10-cv-03571, slip op. at 8 (E.D.N.Y June 15, 2012) (attached as Ex. 16), *aff'd* 2012 U.S. Dist. LEXIS 146150, at *5-6 (E.D.N.Y. Oct. 10, 2012) (conditionally certifying collective class) (Glasser, J.); *accord, e.g., Lynch v. United Service Auto. Ass'n*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007) (because "the

policies and practices relative to the misclassification of [plaintiffs] do not vary, but rather affect all [plaintiffs] the same nationwide," the plaintiff had shown a common policy or plan).

Under this low threshold, therefore, courts in this Circuit "typically grant conditional certification." *Schucker,* 2017 U.S. Dist. LEXIS at *7 (citation omitted); *Guttentag v. Ruby Tuesday Inc*., 2013 U.S. Dist. LEXIS 82350, *9 (S.D.N.Y. June 11, 2013); *Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS 72563, at *5 (E.D.N.Y. July 19, 2010) (over 1,000 assistant managers); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 661-62 (S.D.N.Y. 2009); *Cunningham v. Elec. Data Sys. Corp*., 754 F. Supp. 2d 638, 643-44 (S.D.N.Y. 2010) (over 10,000 employees in 27 different job positions); *Ibea v. Rite Aid Corp*., 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011), *aff'd,* 2012 U.S. Dist. LEXIS 4682 (S.D.N.Y. Jan. 9, 2012); *Gortat,* 2010 U.S. Dist. LEXIS 35451, at *30; *see also* citations at pp. 16-17, below.

Only later, at the second stage, will the district court "on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs."  *Myers*, 624 F.3d at 555; *Lora,* U.S. Dist. LEXIS 112644 at *26; *accord Gortat*, 2010 U.S. Dist. LEXIS 35451, at *31 ("[b]ecause the putative 'similarly situated' plaintiffs have not yet been joined, and may not even be known, the certification is viewed as preliminary and subject to revisitation by the court."); *Raniere v. Citigroup, Inc., et al.*, 2011 U.S. Dist. LEXIS 135393, at *66 (S.D.N.Y. November 22, 2011); *Gjurovich*, 282 F. Supp. 2d *at* 105 (S.D.N.Y. 2003) ("Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.").

Accordingly, while defendants may argue – as Target did at the case conference on May 22, 2019 – that other ETLs may have had different experiences than those already in this case,

that is not relevant at this point. "Under [*Hertz*], a fact-intensive inquiry [as to individual differences] is inappropriate at the notice stage, as Plaintiffs are seeking only conditional certification. The Defendant[s] will have an opportunity to argue that individual inquiries predominate over common issues, based on discovery, at the second phase." *Stevens*, 2012 U.S. Dist. LEXIS 146150, at *11 (quotation and citation omitted). There is good reason for this. Until other ETLs are provided the opportunity to actually join this case, it is impossible to determine how similar, on the ultimate merits, the individuals who actually make up the case may be:

> Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, *see* 29 U.S.C. § 216(b), early certification and notice are favored in order to protect plaintiffs' rights. Thus, only a minimal evidentiary burden is imposed in order to satisfy the "similarly situated" requirement . . . . The heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated. It would not sensibly serve the purposes of a two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

*Gortat,* 2010 U.S. Dist. LEXIS 35451, at *34-35 (Glasser, J.).

That is also why, in case after case in recent years both within this Circuit and in other courts, chain store mid-manager misclassification cases are routinely granted conditional certification. *See, e.g., Ravenell, supra*; *Jacob, supra*; *Stevens, supra*; *Heitzenrater v. Officemax, Inc.*, 2014 U.S. Dist. LEXIS 13823 (W.D.N.Y. 2014) (conditional certification in similar multistate retail assistant store manager case); *Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012); *Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 5, 2012) (same; 8,400 multistate assistant store managers); *Parks v. Dick's Sporting Goods, Inc.,* 2007 U.S. Dist. LEXIS 20949 at *9-10 (W.D.N.Y. Mar. 21, 2007); *see also, e.g., Roberts v. TJX Cos.*, 2018 U.S. Dist. LEXIS 49174, *21 (D. Mass. March 17, 2017) (nationwide collective of over 5,000 Marshalls and Homegoods assistant store managers); *McKee v. PetSmart, Inc.,* 2013 U.S. Dist. LEXIS 174123 (D. Del. Dec. 9, 2013)

(nationwide case against major chain); *Goodman v. Burlington Coat Factory*, 2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) (certifying a 44-state, 465 store, assistant store managers collective action); *Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) (conditional certification of 8,000 assistant store managers).[6] Indeed, although it is well beyond the scope of the present motion, with a sufficiently clear record of comprehensive corporate control over the "manager" position, such misclassification cases can even be certified as Rule 23 class actions, *see, e.g., Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd* 602 Fed. Appx. 3 (2d Cir. 2015); *Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011), and tried as collective actions. *See, e.g., Stillman v. Staples*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009).

Finally, although defendants often argue that their policies themselves are not violative of the FLSA, "[I]t is irrelevant to the propriety of conditional classification that [defendant's] stated policies are not themselves illegal. The relevant illegality charged against [defendant] is that classifying [assistant managers] as 'executive' exempt employees violated the FLSA." *Stevens,* 2012 U.S. Dist. LEXIS 146150, at *7-8 (citing *Zaniewski*, 848 F. Supp. 2d at 229). Or, as Judge Oetken wrote, in yet another retail misclassification case, "At this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law, but rather on whether the

---

[6] Other such cases are legion. *See also, e.g., Stevens*, 2012 U.S. Dist. LEXIS 190689, at *28 (conditionally certifying nationwide class of ASMs based upon one plaintiff and three opt-in plaintiff depositions, a 30(b)(6) deposition, and corporate documents such as job description and a policy deviation form); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (conditionally certifying a collective of assistant store managers in five states  based upon five declarations (no depositions), one Rule 30(b)(6) deposition and corporate documents); *Alli v. Boston Market Corp.*, 2011 U.S. Dist. LEXIS 101530, at *7-15 (D. Conn. September 8, 2011) (relying upon corporate documents, plaintiff declarations and testimony, and corporate deposition in finding that plaintiff's had met the "modest burden of submitting evidence" and certifying nationwide collective of  Boston Market assistant managers, with the exception of California); *Dick's,* 2007 U.S. Dist. LEXIS 20949 (affirming conditional certification of 35-state, 275 store collective action of "Golf Pros" based upon affidavits from five employees, a job posting, and an organizational chart).

proposed plaintiffs are 'similarly situated' under 29 U.S.C. §216(b) with respect to their allegations that the law has been violated." *Jacob v. Duane Reade, Inc.,* 2012 U.S. Dist. LEXIS 11053, at *4 (S.D.N.Y. Jan. 27, 2012). The merits determination – namely, that the exempt classification was wrong because the collective action members do not actually perform sufficient managerial work – is not now before the Court. *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *4, *10, and *15 (leading decision by Judge Lynch; merits are not determined at first stage); *see also, e.g., Sbarro*, 982 F. Supp. at 261 (cited at *Hertz,* 624 F.3d at 555) (Sotomayor, J.) (same). Rather, the allegedly common policy that violates the law is the actual classification decision, as was well-stated by Judge Bianco:

> It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs. Similarly, it is not critical whether [plaintiff's] position was that of a porter...while [another plaintiff], for example, was a 'produce clerk.'... As long as they were all similarly situated *with respect to being subject to the same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs, conditional certification of the collective action is appropriate.

*Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780, at *20 (E.D.N.Y. Feb. 3, 2009) (emphasis in original; citing cases); *accord, e.g., Jason v. Falcon Data Com., Inc.,* 2011 U.S. Dist. LEXIS 77352, at *16 (E.D.N.Y. July 18, 2011) (Gleeson, J.) (argument that common policy did not violate the law is a merits argument and unpersuasive at first-stage); *Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *13-15 (same) (Townes, J.); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations . . . .") (Irizarry, J.).

Indeed, virtually any of the pieces of evidence presented here – the deposition testimony of Plaintiffs, or the admissions of Target's corporate designated witness, or Target's corporate

documents describing and defining the ETL position – alone would support the relief sought and

suffice to meet Plaintiffs' "lenient" burden of "some evidence."  Taken together, there can be no

reasonable question to the contrary. As Judge Haight wrote in conditionally certifying another

retail chain assistant mid-manager collective action on similar facts:

> [U]niform PriceRite corporate policy details employees' job duties; the same
> detailed job description is given to each ASM which each ASM is required to
> follow; corporate efforts are made to ensure that ASMs' jobs are uniform and
> consistent from store to store and state to state; the ASM position has not changed
> in 17 years; there is only one ASM job description and one set of duties for all
> PriceRite stores; those job descriptions are provided to ASMs to instruct them as
> to their duties; and all ASMs, for all stores and in all states, are trained in the
> same way through methods supervised by the same individual.

> Employers' use of practices such as these appear with regularity throughout the
> cited cases. They make good business sense. The Court is not critical of them.
> However, when such practices respecting a particular group of employees are
> coupled with the employer's uniform classification of all members of that group
> as 'exempt,' the conclusion is compelled that the employees are 'similarly
> situated' for purposes of an FLSA action challenging the validity of the
> exemption.

*Zaniewski v. PRRC Inc.,* 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (also summarizing other

Second Circuit district court misclassification certifications); *Ravenell*, 2010 U.S. Dist. LEXIS

72563, at *11-12 (certifying nationwide collective action of over 1,000 Avis shift supervisors

(akin to assistant store managers) ("Plaintiffs' argument is buttressed by Avis's own corporate

documents, which reveal that all Avis shift managers, wherever located, were treated as part of a

category of similarly situated employees"); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *36 (the

plaintiff, like here, "has cited corporate documents indicating that store managers had similar

duties, that decisions regarding the content of their job descriptions and their classification as

exempt from the FLSA were made at the national corporate level, and that [the employer]

maintained a high degree of control over its store managers' daily tasks through nationwide

corporate policies and procedures."); *Ferreira,* 2012 U.S. Dist. LEXIS 100820, at *8  (plaintiff's

testimony and uniform corporate policies show that "the job descriptions for Assistant Managers demand the performance of nonexempt duties").[7]

In sum, Plaintiffs have met the *Myers* requirements of showing "some" evidence of similar job requirements and pay provisions for a misclassification claim – indeed, there is substantial such evidence presented and in several different forms. ETL's at Target are governed by the same set of designated job duties and responsibilities (pp. 5-6, *supra*), are compensated in the same manner (pp. 6-7, *supra*), are classified as exempt from the FLSA's overtime provisions (*id.*), are subject to the same corporate policies and work rules (pp. 7-8, *supra*), and are uniformly trained to the same expectations and standards (pp. 8-9, *supra*). Given Target's undeniable "uniform business practice" of treating ETLs similarly, notice should issue.

### IV.   **The Court Should Facilitate Notice**

#### a.   **Plaintiffs' Proposed Notice is Timely, Accurate, and Informative**

The Court should approve Plaintiffs proposed Collective Action Notice and Consent to Join form ("Notice and Consent Form") (Ex. 17). The Notice and Consent Form is "accurate" and "informative" and is consistent with the model notices published by the Federal Judicial Center. *See Hoffmann-La Roche*, 493 U.S. at 172.

---

[7] Target may attempt to rely on the few retail-store misclassification cases in which first stage notice was not granted in this Circuit. The problem with relying on any of those cases is that none of them had the admissions akin to those made by Target's Rule 30(b)(6) witness, nor all the other evidence here. For example, in the two *Guillen v. Marshalls*, decisions, 750 F. Supp. 2d 469 (S.D.N.Y. 2010), and 841 F. Supp. 2d 797 (S.D.N.Y. 2012), plaintiffs' evidence consisted only of plaintiffs who worked in the same small geographical area. And these decisions have been explicitly rejected by other courts as inconsistent with the governing *Hertz* standard. *See, e.g., Lloyd v. J.P. Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 129102 (S.D.N.Y. Sept. 9, 2013); *Pippins*, 2012 U.S. Dist. LEXIS 949, at *34-35; *Ibea*, 2011 U.S. Dist. LEXIS 144652, at *6-7  (defendant's argument relying upon *Guillen* "places an extremely heavy burden on plaintiff and makes it almost impossible to assert mis-classification claims in a collective action, 'thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.'") (quoting *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *32-33).

### b.   The Notice Should Be Sent to All ETLs Who Worked Within Three Years of the Filing of the Complaint

The Court should authorize Notice to be sent to prospective collective ETLs who worked for Target at any time between June 28, 2014 and the date on which the Court grants this Motion (the "Collective"). The Court should also toll the statute of limitations from June 28, 2014, the date on which the Complaint was filed, given the delay in this litigation due to the multiple month stay of proceedings and, even more so, due to Defendants' discovery practices. Defendants' obstructive course of action in this litigation has required multiple hearings before Magistrate Judge Pollak, regarding, for instance, the location of the opt-in depositions, Target's overreaching discovery requests, Target's attempts to re-open the deposition of Ms. Jibowu (after taking over seven hours of testimony), Target's attempts to circumvent the denial of their request to re-open Ms. Jibowu's deposition by serving Ms. Jibowu with nearly 200 Requests for Admission, etc. Defendants' practices have added months to first-stage discovery in this matter, and a process that should routinely take 3-4 months has, in this case, taken over 18 months.

And although the notice period in FLSA actions is often set from the date when the motion for condition certification is filed, Judges in this Court recognize that where there are circumstances that could implicate equitable tolling concerns, courts should "err on the side of caution and set the time for notice using the date of the filing of the lawsuit." *Lora*, 2017 U.S. Dist. LEXIS 112644, at *30-31 (*citing Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74 (E.D.N.Y. 2016) ("because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint") (internal quotation marks and citations omitted)); *see also Wang v. Empire State Auto Corp.*, 2015 U.S. Dist. LEXIS 99089, at *33 (E.D.N.Y. June 29, 2015) (setting notice period based on "the remedial purposes of the FLSA [being] best served by setting the time for both discovery

and notice using the date of the filing of the Complaint[,]" without delving into the "future argument" of equitable tolling); *Tello*, 2018 U.S Dist. LEXIS 22702 at *29-30 ("given the potential for equitable tolling of opt-in plaintiffs' claims, the Court concludes it is appropriate to use the date of the date the Complaint was filed…to calculate the date on which the collective action period begins"); *Muhtarov v. Mesivita of Long Beach*, 2015 U.S. Dist. LEXIS 138324 (E.D.N.Y. Oct. 9, 2015) (same); *Robles v. Liberty Rest. Supply*, 2013 U.S. Dist. LEXIS 177922 (E.D.N.Y. Dec. 18, 2013) (same).

Alternatively, at minimum, the statute of limitations should be tolled from the date of the filing of this motion, June 28, 2019. Courts routinely allow for tolling during the pendency of a motion for conditional certification "because of the high potential for prejudice to potential opt-in plaintiffs. " *Chen*, 2016 U.S. Dist. LEXIS 20003 at *31-32; *see also Kemper v. Westbury Operating Corp.*, 2012 U.S. Dist. LEXIS 149682 (E.D.N.Y. Oct. 17, 2012) (granting request to notify individuals who were employed three years from the date of the filing of a motion for conditional certification, rather than from the date upon which notice was mailed); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures, Inc.*, 2013 U.S. Dist. LEXIS 121964 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification).

   c.   **The Court Should Order Target to Produce Contact Information for the Collective**

To facilitate notice, Plaintiff requests that the Court order Target to produce a computer-readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective Members, and the Social Security numbers of those Collective Members whose notices are returned undeliverable.

The benefits of sending FLSA notice "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. "[I]t is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Valerio*, 314 F.R.D. at 74-75 (E.D.N.Y. 2016); *Puglisi v. TD Bank, N.A.*, 998 F. Supp.2d 95, 102 (E.D.N.Y. 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with the conditional certification of an FLSA collective action.")

The contact information production is consistent with "the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in . . . ." *Morris v. Lettire Constr. Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012) (quotation marks and citation omitted); *see also Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (ordering production of all names, addresses, telephone numbers, e-mail addresses, and social security numbers for distribution of notice); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (requiring defendants to supply a "computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers."); *Ack v. Manhattan Beer Distribs.*, 2012 U.S. Dist. LEXIS 67883, at *21 (E.D.N.Y. May 15, 2012) (ordering the production of names, addresses, phone numbers, and e-mail addresses); *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 949, at *41 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, . . . email notice in addition to notice by first class mail is entirely appropriate.").

Further, the notices also be disseminated via email and text message in order to fulfill the goal of the FLSA's collective mechanism which seeks to reach the largest number of putative opt-in plaintiffs, particularly for employees like retail assistant store managers whose contact information can and does frequently change. *Martin v. Sprint/united Mgmt. Co*., 2016 U.S. Dist. LEXIS 352, at *58 (S.D.N.Y. Jan. 4, 2016) (granting text message notice); *Bhumithanarn v. 22 Noodle Mkt. Corp*., 2015 U.S. Dist. LEXIS 90616, at *12 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."); *Vasto v. Credico (USA) LLC*, 2016 U.S. Dist. LEXIS 60158 (S.D.N.Y. May 5, 2016) (same).[8]

The Court should also authorize Plaintiff to send the proposed Reminder Postcard, attached as Ex. 18, and a reminder e-mail, part-way through the notice period. It is well-documented that people often disregard collective action notices. *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual* Certification, and Wage Law Enforcement in the Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008). Courts in this Circuit regularly authorize reminder notices in order to increase the likelihood that collective members receive notice of their rights.

---

[8] *Accord also Qazi v. Stage Stores, Inc*., 2019 U.S. Dist. LEXIS 102363, at *9 (S.D. Tex. June 18, 2019)(ordering that notice be conveyed via First Class U.S. Mail, email, and text message); *Eley v. Stadium Grp., LLC*, 2015 U.S. Dist. LEXIS 126184, at *9 (D.D.C. Sept. 22, 2015) (granting request for text message notice because the request was "in line with what has been approved in other FLSA collective actions"); *Irvine v. Destination Wild Dunes Mgmt*., Inc., 132 F.Supp.3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and email addresses because traditional methods of communication via regular mail and land line telephone numbers quickly become obsolete."); *Dempsey v. Jason's Premier Pumping Services, LLC*, 2015 U.S. Dist. LEXIS 187322, at *4 (D. Colo. Nov. 11, 2015) (granting text message notice); *Regan v. City of Hanahan*, 2017 U.S. Dist. LEXIS 58678, at *8 (D.S.C. Apr. 17, 2017) ("Mail, email and text message notice is reasonable"); *Landry v. Swire Oilfield Servs*., 252 F. Supp. 3d 1079, 1129 (D.N.M. May 2, 2017) ("[C]ommunication via email and text message will "increase the chance of the class members receiving and reading the notice").

*E.g.*, *Chhab v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, at *51 (S.D.N.Y. Sept. 19, 2013) (authorizing reminder notice "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in"); *Morris*, 896 F. Supp. 2d at 275 (same); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 466 (E.D.N.Y. 2014) (authorizing reminder notices); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) (same); *Limarvin v. Edo Rest. Corp.*, 2013 U.S. Dist. LEXIS 22431, at *9-10 (S.D.N.Y. Jan. 21, 2013) (same). Defendants have no legitimate reason to oppose a reminder mailing other than that it may increase the participation rate, which is not a valid reason. Plaintiffs will bear the cost of the reminder mailing, and the reminder mailing will not change the end of the notice period. Defendants will not be prejudiced at all.

Finally, Plaintiffs request that the Court approve electronic signature and submission of consent forms directly to a third party notice administrator using the administrator's online portal on its notice website. This method of directly submitting electronically signed consents has now become common in the Circuit. *See, e.g., Lin v. Everyday Beauty Amore, Inc.* 2018 U.S. Dist. LEXIS 207988 (E.D.N.Y. Dec. 12, 2018); *Sierra v. Spring Scaffolding LLC*, 2015 U.S. Dist. LEXIS 178006 (E.D.N.Y. Sept. 30, 2015); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014).

<u>**CONCLUSION**</u>

For all the foregoing reasons, Plaintiffs respectfully submit that the Court: (1) conditionally certify the proposed collective; (2) order Target to produce the computer-readable list described above; and (3) authorize Plaintiffs to mail and email the proposed Notice and Consent to Join form and the Reminder Postcard and email to the Collective.

Dated: June 28, 2018
   Rye Brook, NY

By: _____
Seth R. Lesser
Fran L. Rudich
Christopher M. Timmel
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Marc S. Hepworth
Charlie Gershbaum
David A. Roth
Rebecca S. Predovan
Janine Kapp
HEPWORTH GERSHBAUM & ROTH, PLLC
192 Lexington Avenue, Suite 802
New York, NY 10016
Tel: (212) 545-1199

*Attorneys for the Plaintiffs*