UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
PRISCILLA JIBOWU, individually and on
behalf of all other persons similarly situated,

                Plaintiff,                          **MEMORANDUM & ORDER**
                                                                                  17-CV-3875 (PKC) (CLP)

        - against -

TARGET CORPORATION and TARGET
CORPORATION OF MINNESOTA,

                Defendants.
------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Priscilla Jibowu, formerly employed as an Executive Team Leader ("ETL") by Defendants Target Corporation and Target Corporation of Minnesota (collectively, "Target"), brought this collective action under the Fair Labor Standards Act ("FLSA") against Target for alleged overtime violations. Several other former Target ETLs subsequently joined the action as opt-in plaintiffs (collectively, "Plaintiffs"). On September 30, 2020, the Court granted conditional certification of the collective action, but circumscribed it to certain ETL positions at certain Target stores. *See Jibowu v. Target Corp.*, —F. Supp. 3d—, 2020 WL 5820957, at *25, *29 (E.D.N.Y. Sept. 30, 2020) ("September 30 Order"). Accordingly, the parties were directed to confer and submit a revised Proposed Notice and Consent to Join form. *Id.* at *29.

       The parties, however, have been unable to resolve all their differences regarding the Notice and Consent to Join form, and each party has submitted its own proposed form. (Plaintiffs' Proposed Notice and Consent to Join Form ("Pls.' Notice"), Dkt. 131-1; Target's Proposed Notice and Consent to Join Form ("Target's Notice"), Dkt. 132-2.) As discussed below, the Court agrees in part with Plaintiffs and in part with Target, and therefore directs the parties to submit a further revised Proposed Notice and Consent to Join form that complies with the directives herein.

1

**DISCUSSION**

The Court assumes the parties' familiarity with the facts of this case, which are set forth at length in the September 30 Order. *See* 2020 WL 5820957, at *1–2, *17–19. Presently, the parties disagree in five areas with respect to the Proposed Notice: (1) the accuracy and specificity with which the Notice describes the scope of the conditionally certified collective; (2) the level of detail included in the Notice regarding allegedly managerial and non-managerial tasks that ETLs perform; (3) whether the Notice should include defense counsel's contact information; (4) whether the Notice should inform potential opt-in plaintiffs of their right to choose their own counsel; and (5) whether Plaintiffs' counsel may receive personal contact information for members of the collective. Each of these issues is addressed in turn.

**I.      Specific Store Locations and ETL Positions**

"[I]t is well-established that 'courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Cabrera v. Stephens*, No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012)). Accordingly, the Court "has the authority to facilitate and narrow a FLSA opt-in notice such that it is directed towards the appropriate individuals that are the subject of the FLSA collective action." *Jibowu*, 2020 WL 5820957, at *25 (internal quotation marks omitted) (citing *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016)). "The Court understands its discretion to be guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing

undue burdens on the defendants." *Id.* at \*25 (quoting *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)).

> Here, the September 30 Order conditionally certifies a collective comprised of
>
> current and former Food ETLs, Sales Floor ETLs, Softlines ETLs, Hardlines ETLs, Guest Experience ETLs, Replenishment ETLs, and Logistics ETLs in stores that do not have Replenishment ETLs, employed by Defendants at the Target store locations within California, Illinois, New York, Ohio, Oklahoma, Pennsylvania, and Texas, at which Plaintiff Jibowu or the opt-in Plaintiffs worked, at any time from June 28, 2014 to the present.

*Id.* at \*29. The September 30 Order makes clear that the subject stores include "locations at which Plaintiffs worked, even temporarily," during the relevant period. *Id.* at \*25. Target, though, takes issue with including several stores in California—Riverside SE, Moreno Valley East, Whittier, Palm Springs, Lake Elsinore, and Riverside—at which one of the opt-in Plaintiffs, Isaura Isais, allegedly worked on a temporary basis from time to time. (Target's Letter Brief ("Target Br."), Dkt. 132, at 2; *see also* Plaintiffs' Letter Brief ("Pls. Br."), Dkt. 134, at 1.) Target argues that it has no records of Isais's temporary work at these stores and has no way of verifying that Isais worked at the stores during the conditionally certified period, given that Isais worked as an ETL at Target from November 2007 until April 2019. (Target Br., Dkt. 132, at 2; *see also* Declaration of Isaura Isais ("Isais Decl."), Dkt. 79-5, ¶ 2.) Plaintiffs point out that, according to Target's counsel, Target does not keep records of temporary employment. (Pls. Br., Dkt. 134, at 1.) Additionally, Plaintiffs' counsel represents that they have confirmed with Isais that she worked at each of the disputed California stores after June 28, 2014. (*Id.*)

In light of the representations by Plaintiffs' counsel, which the Court has no reason to doubt, the six disputed California stores are part of the conditionally certified collective and should be included in the Proposed Notice. At this stage of the proceedings, all Plaintiffs must do to be able to send notice to potential opt-in plaintiffs is "make a modest factual showing" that they and

3

potential opt-in members are "similarly situated with respect to the allegedly unlawful policy or practice." *Jibowu*, 2020 WL 5820957, at *20 (internal quotation marks omitted) (quoting *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016)); *accord Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). "The court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations at this stage." *Jibowu*, 2020 WL 5820957, at *20 (internal quotation marks and citation omitted). Here, Isais declares that during her employment as an ETL at Target, she worked "from time to time at seven other Target stores throughout California," including "locations in Whittier, Palm Springs, Moreno Valley, Lake Elsinore, Riverside, Riverside East, and Menifee." (Isais Decl., Dkt. 79-5, ¶ 8.) At each of those locations, the work "was identical," and she "witnessed and met other ETLs performing manual labor, working more than 40 hours a week, and not receiving overtime pay." (*Id.*) These statements, combined with the representations of Plaintiffs' counsel that they have confirmed that Isais worked at six of the seven locations—all except Menifee—after June 28, 2014, satisfy Plaintiffs' burden at this juncture. Even under a heightened "modest plus standard," where the Court considers "evidence submitted by both parties," *Jibowu*, 2020 WL 5820957, at *20 (internal quotation marks omitted) (quoting *Korenblum*, 195 F. Supp. 3d at 482), Target provides no evidence that Isais did not work at the six disputed stores in California during the relevant period. That Target fails to keep records of temporary employment is no reason to exclude the disputed stores from the Proposed Notice, particularly since one of the goals of notice is "to make as many potential plaintiffs as possible aware of this action and their right to opt in." *See id.* at *25 (quoting *Guzelgurgenli*, 883 F. Supp. 2d at 356).

      The Court, however, agrees with Target that the Proposed Notice must be specific as to which ETL positions are part of the collective. The September 30 Order conditionally certifies

only certain ETL positions—namely, "Food ETLs, Sales Floor ETLs, Softlines ETLs, Hardlines ETLs, Guest Experience ETLs, Replenishment ETLs, and Logistics ETLs in stores that do not have Replenishment ETLs." *Id.* at *29. Yet Plaintiff's Proposed Notice mostly uses the general term "ETL" throughout, after listing specific ETL positions at the beginning of the notice. (*See* Pls.' Notice, Dkt. 131-1.) For example, at one point, Plaintiff's Proposed Notice states: "The Court has authorized this notice under the FLSA on behalf of all persons who are or were employed as ETLs by Target at any time since June 28, 2014 to the present." (*Id*. at 1.) This use of the general term "ETL" is confusing, if not misleading, and the Court agrees that "ETL" should be replaced with "Subject ETL"[1] throughout, where appropriate. The Court also agrees that the Proposed Notice should specify that only Logistics ETLs at stores without Replenishment ETLs are included in the conditionally certified collective. Plaintiffs argue that these changes make the Proposed Notice less legible, but the Court disagrees. Regardless, any minimal decrease in the legibility of the Proposed Notice is outweighed by the need for the notice to be clear and accurate. *See Cabrera*, 2017 WL 4326511, at *8 (stating that district courts have "broad discretion" to effectuate notice that is "accurate and timely").

Accordingly, with respect to the stores at issue and the specificity with which the Proposed Notice refers to ETLs, the Court adopts a hybrid of Plaintiffs' and Target's proposed notices. In particular, the beginning of Plaintiffs' Proposed Notice (Dkt. 131-1, at 1) should be modified as follows:[2]

---

[1] As discussed below, "Subject ETL" will be defined by type of ETL, store location, and date of employment at the outset of the Proposed Notice.

[2] Plaintiffs' Proposed Notice lists the "Guest Experience" ETL position twice. (*See* Dkt. 131-1, at 1.) In modifying Plaintiffs' Proposed Notice, the Court fixes this duplication.

> If you were employed by Target as an **Executive Team Leader ("ETL")** in any of the following positions: ~~Guest Experience;~~ Hardlines; ~~Logistics;~~ Replenishment; Salesfloor; Guest Experience; Food; ~~or~~ Softlines<span style="color:red">; or Logistics (in a store with no Replenishment ETL)</span> **- at one of these stores**: T1398 (Edmond); T1401 (Gateway); T1430 (Richardson Square Mall); T1849 (Atlantic Terminal); T1889 (Chicago South Loop); T1961 (Eastvale); T2159 (Sandusky); T2234 (Rowlett); T2739 (Lawton); T2486 (South Lebanon); T1843 (Riverside SE); T2309 (Moreno Valley East); T2019 (Whittier); T307 (Palm Springs); T2195 (Lake Elsinore); or T212 (Riverside) **at any time since June 28, 2014 to the present then you <span style="color:red">are a "Subject ETL" and</span> may have rights under this lawsuit.**

Additionally, the term "ETL" should be replaced with "Subject ETL" throughout, where appropriate.

## II.     Listing Examples of Disputed Tasks

Plaintiffs' Proposed Notice contains a description of the case and claims. This description includes examples of tasks performed by ETLs that Plaintiffs allege are non-managerial. Specifically, Plaintiffs' Proposed Notice states:

> A former ETL-Replenishment and ETL-Sales Floor, Priscilla Jibowu, has sued Target, and she has been joined in the lawsuit by seven other ETLs. They allege that they and the other ETLs should have been paid time-and-a-half overtime for all hours worked more than 40 hours in a week. They allege that the ETLs do not perform management duties as their primary duties, and instead that their primary duties do not differ substantially from those performed by hourly, non-exempt employees. *These duties include tasks such as stocking shelves, zoning, working the cash registers, cleaning the store, assisting customers, building displays, unpacking merchandise, and unloading trucks.* As a result, they claim that the ETLs are entitled to overtime under the Fair Labor Standards Act ("FLSA").

(Pls.' Notice, Dkt. 131-1, at 1 (emphasis added).)

Target objects to the list of examples, i.e., the sentence emphasized above. (Target Br., Dkt. 132, at 2–3.) It argues that the list of examples is gratuitous, "is plainly advocacy disguised as notice, and an attempt to coach potential members of the collective about [Plaintiffs'] theory of the case should they wish to participate." (*Id.* at 3.) Target maintains that if Plaintiffs' list of examples is included, then the Notice "should also list managerial tasks performed to provide a

6

balanced picture of the arguments in the case." (*Id.*)  Target proposes adding the language emphasized below:

> Target denies the allegations in the complaint and is defending against the lawsuit. Target contends that the primary duties of Subject ETLs are management tasks, not non-management tasks, *including directing the work of Team Members and Team Leaders; recommending or participating in hiring, training, promotion, disciplinary, termination, or other employment-related decisions; evaluating and coaching performance of Team Members and Team Leaders; and making independent judgments about how to run the ETL's area of the store*; denies liability; and maintains that ETLs were paid properly and correctly classified as exempt from overtime compensation.

(Target's Notice Redlined, Dkt. 132-1, at 3 (emphasis added).)

The Court disagrees with both Target's objection and its proposed addition.  Notice is meant to provide potential opt-in plaintiffs with "accurate and timely" information, "so that they can make informed decisions about whether to participate."  *Jibowu*, 2020 WL 5820957, at *25 (quoting *Bittencourt v. Ferrara Bakery & Café, Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015)); *accord Cabrera*, 2017 WL 4326511, at *8.  The examples that Plaintiffs provide do just that: they make concrete the claims in this case so that a potential opt-in plaintiff may make an informed decision about whether to participate.  Target's proposed addition, on the other hand, is superfluous and confusing.  The Notice already explains that "Target denies the allegations in the complaint" and "contends that the primary duties of Subject ETLs are management tasks." (Pls.' Notice, Dkt. 131-1, at 1.)  In light of these statements, the Court fails to see how Target's proposed addition would help potential opt-in plaintiffs make an informed decision about whether to participate, as opposed to attempting to confuse and dissuade them from joining the action.

Moreover, Target's concern about "balance" is misplaced.  (*See* Target Br., Dkt. 132, at 2–3.)  The purpose of the Notice is to inform Subject ETLs of the pendency of the action so that they may decide whether to join as plaintiffs, not to litigate the case.  Accordingly, allowing Plaintiffs

7

to include examples of non-managerial tasks to make clear their claims in concrete terms, without a corresponding list of managerial tasks, does not create an improperly "unbalanced" notice.

In short, Target's proposed addition is inappropriate, and the Court approves Plaintiffs' proposed description of the case and claims without any further additions or modifications.

## III.     Defense Counsel's Contact Information

Target asks that the Notice include defense counsel's contact information. (Target Br., Dkt. 132, at 3.) Target proposes that this information be included at the end of the section titled "What Happens If I Do Not Join?" and be preceded by the following sentence: "If you decide not to join the lawsuit, you also may contact Target's counsel (but if you decide to join the lawsuit, ***do not contact them***)." (Target's Notice, Dkt. 132-2, at 4 (emphasis in original).)

There is a divide of authority on whether defense counsel's contact information should be included in an opt-in notice. On one hand, "[c]ourts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of collective action." *Anjum v. J.C. Penny Co.*, No. 13-CV-460 (RJD) (RER), 2015 WL 3603973, at *14 (E.D.N.Y. June 5, 2015) (quoting *Slamna v. API Rest. Corp.*, No. 12-CV-757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013)); *accord Finnigan v. Metro. Transp. Auth.*, No. 19-CV-516 (PKC) (RER), 2020 WL 1493597, at *4 (E.D.N.Y. Mar. 26, 2020); *Escano v. N & A Produce & Grocery Corp.*, No. 14-CV-4239 (PAC), 2015 WL 1069384, at *2 (S.D.N.Y. Mar. 11, 2015); *see also Cano v. Four M Food Corp.*, No. 08-CV-3005 (JFB) (AKT), 2009 WL 5710143, at *11 (E.D.N.Y. Feb. 3, 2009) (agreeing that "both counsel's contact information should be included in the notice"); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 108 (S.D.N.Y. 2003) (same). The basis for this conclusion has not always been made clear, but one reason that has been given is that the "information is necessary to afford employees the opportunity to communicate with defense counsel." *Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2014 WL 5314822, at *4

8

(S.D.N.Y. Oct. 16, 2014) (citation and internal quotation marks omitted).  On the other hand, some courts have concluded that "it is appropriate that defendants' counsel not be listed as contacts on the form of notice" because between plaintiffs' counsel and defendants' counsel, "[o]nly plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege."  *Chhab v. Darden Rests., Inc.*, No. 11-CV-8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013); *see also Gurrieri v. County of Nassau*, No. 16-CV-6983 (ADS) (SIL), 2019 WL 2233830, at *11 (E.D.N.Y. May 23, 2019) ("Inclusion of defense counsel's contact information is not required to render an FLSA notice fair, and is likely to create confusion rendering distribution or collection of consent to join forms less effective." (citing *Chhab*, 2013 WL 5308004, at *16)); *Arciello v. County of Nassau*, No. 16-CV-3974 (ADS) (SIL), 2017 WL 4998074, at *7 (E.D.N.Y. Oct. 30, 2017) (same); *Cabrera*, 2017 WL 4326511, at *8 (same).

In this case, the inclusion of defense counsel's contact information appears unlikely to create confusion, render notice less effective, or implicate concerns of attorney-client privilege, given that it would be placed in a section titled "What Happens If I Do Not Join?" and after an explicit warning to employees—in bolded italics—not to contact defense counsel if they decide to join the lawsuit.  *Cf. Agerbrink v. Model Serv. LLC*, 2016 WL 406385, at *6 (S.D.N.Y Feb. 2, 2016) (holding that because it was inappropriate for defendant to suggest that potential plaintiffs contact defense counsel with questions about the litigation, defense counsel's contact information had to be moved to a subsection titled "What is [Defendant's] Position"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (allowing the inclusion of defense counsel's contact information, but under a separate heading of "Attorneys for Defendants," rather than a section titled "Further Information," so as "to avoid unnecessary confusion").  Therefore,

9

the Court approves the inclusion of defense counsel's contact information in the specific location and manner proposed by Target. (*See* Target's Notice, Dkt. 132-2, at 4.)

### IV. Informing Opt-in Plaintiffs of Right to Choose Own Counsel

Target also asks that the Notice include language "making clear" that opt-in plaintiffs may choose their own counsel if they decide to participate in the lawsuit. (Target Br., Dkt. 132, at 3.) But Plaintiff's Proposed Notice already makes it clear that opt-in plaintiffs may choose their own counsel. (*See* Pls.' Notice, Dkt. 131-1, at 3 ("You may also join this lawsuit by hiring another attorney of your own choosing at your own expense. If you do so, your attorney must complete and return the Consent to Join form on your behalf on or before [60 days from the mailing].").) Therefore, the Court denies Target's request to add additional language regarding the right of opt-in plaintiffs to choose their own counsel as unnecessary.

The Court, however, finds it confusing that Plaintiffs' Proposed Notice instructs opt-in plaintiffs who choose their own attorney to have counsel "complete and return *the* Consent to Join form on [their] behalf on or before [60 days from the mailing]" (*id.* (emphasis added)), because that form states, "By signing and returning this consent form, I designate [Plaintiffs' counsel] to represent me in this case" (*id.* at 5). Therefore, to minimize confusion, the Court directs that the phrase "the Consent to Join form" be changed to "a consent to join form."

Similarly, the Court finds it confusing that after informing opt-in plaintiffs of their right to choose their own counsel, the very next section of Plaintiffs' Proposed Notice—entitled "How Do I Join?"—states, "If you want to participate in this lawsuit, it is extremely important that you read, sign, and return *the* Consent to Join form by [60 days from the date of mailing]." (*Id.* at 3 (emphasis added).) Accordingly, the Court modifies that sentence to say, "If you want to participate in this lawsuit, it is extremely important that you read, sign, and return the Consent to Join form by [60

days from the date of mailing] or, if you decide to hire your own attorney, have your attorney return a consent to join form on your behalf by [60 days from the date of mailing]."

### V.     Personal Contact Information of Collective Members

The final area of disagreement between the parties is whether, as part of the notice process, Defendants must provide Plaintiffs' counsel the personal contact information—including name, mailing address, telephone, and email—for all members of the collective. (*See* Target Br., Dkt. 132, at 2; Pls. Br., Dkt. 134, at 3.) It appears the parties have agreed to use a third-party notice administrator to handle the notification and consent-return process. (Target Br., Dkt. 132, at 2.) Target argues that only the third-party administrator needs the personal contact information of collective members to effectuate notice. (*Id.*) Plaintiffs argue that courts routinely require defendants in FLSA collective actions to provide contact information of the sort Plaintiffs are now requesting, even where a third-party administrator handles the notice process. (Pls. Br., Dkt. 134, at 3.) Previously, Plaintiffs requested that Target be ordered "to produce a computer-readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective Members, and the Social Security numbers of those Collective Members whose notices are returned undeliverable." *Jibowu*, 2020 WL 5820957, at *28 (quoting Dkt. 79-1, at 22). The Court found such a request to be "overbroad" and directed Plaintiffs "to modify the requested contact information so as not to include last known mailing addresses or the social security numbers of prospective plaintiffs whose notices are returned as undeliverable." *Id.*

Although Plaintiffs are correct that "[i]t is typically appropriate for courts in FLSA collective actions to order the discovery of contact information of potential opt-in plaintiffs," *Gurrieri*, 2019 WL 2233830, at *12, none of the cases cited by Plaintiffs support their assertion that where the parties have agreed to use a third-party administrator to handle the notification and

11

consent-return process, Plaintiffs' counsel is entitled to the personal contact information of potential plaintiffs, *see id.* (permitting plaintiffs to effectuate notice); *Anyere v. Wells Fargo Co.*, No. 09-CV-2769, 2010 WL 1542180, at *4 (N.D. Ill. Apr. 12, 2010) (concluding that the use of a third-party administrator was "not necessary" and allowing disclosure of contact information to plaintiffs); *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554–55 (N.D. Ill. 2008) (holding that plaintiff's need to effectuate notice to similarly situated employees outweighed the employees' privacy rights).[3]  Given that the parties have agreed to use a third-party administrator to notify and collect consent forms from collective members, Plaintiffs' counsel does not need the contact information of collective members to effectuate proper notice, and Plaintiffs provide no other particular reason that their counsel needs the personal contact information of potential opt-in members.  Moreover, as Target points out, once an individual opts in to the collective, Plaintiffs' counsel will receive that individual's contact information.  (Target Br., Dkt. 132, at 2.)

*Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2018 WL 6492741 (E.D.N.Y. Dec. 10, 2018), is instructive.  In that case, the court granted the defendants' "reasonable request" to use—at their expense—a third party administrator to issue notice. 2018 WL 6492741, at *8.  The court accordingly ordered the defendants to produce to the third-party administrator "the names, last known addresses, email addresses, and dates of employment" of all potential collective members. *Id.* at *9.

---

[3] One of the cases cited by Plaintiffs, *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB) (RLM), 2019 WL 2088609 (E.D.N.Y. May 13, 2019), is ambiguous as to whether the parties used a third-party administrator.  The notice attached as an appendix to the court's order indicates that a third-party administrator handled the notice process. *See* 2019 WL 2088609, at *17–22.  But the court's order itself, in directing production of certain personal information "to plaintiffs," authorized "plaintiffs to send notice" and directed that consent forms be returned to plaintiffs' counsel. *Id.* at *14–15.  Given *Mason*'s actual reasoning and conclusions, that decision does not support Plaintiffs' assertion here.

12

Therefore, in light of the parties' agreement to use a third-party administrator to notify and collect consent forms from collective members, Plaintiffs' request for Defendants to provide collective members' personal contact information to Plaintiffs' counsel is denied, but without prejudice to a showing of necessity in the future. Subject to the Protective Order entered in this case (*see* Dkt. 44), Target shall produce to the third-party administrator, in computer-readable and searchable format, at least the names, last known email addresses, last known telephone numbers, dates of work, and work locations for all collective members in this case. Moreover, to the extent that the last known mailing addresses of collective members are known to Target and are necessary "to make as many potential plaintiffs as possible aware of this action and their right to opt in," the Court amends its September 30 Order and directs Target to produce such mailing addresses to the third-party administrator. *See Jibowu*, 2020 WL 5820957, at *25 ("The Court understands its discretion to be guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." (quoting *Guzelgurgenli*, 883 F. Supp. 2d at 356)); *id.* at *28 ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and date of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." (quoting *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014))). For example, Target should at least produce last known mailing addresses for collective members as to whom Target has no last known email address.

Finally, to avoid confusion, the Court modifies section "V. How Do I Join?" of Plaintiffs' Proposed Notice (Dkt. 131-1, at 3) as follows, to reflect the Court's directions both in this section and in the previous section, *see supra*, Section IV:

13

Enclosed is a Consent to Join form. If you want to participate in this lawsuit, it is extremely important that you read, sign, and return the Consent to Join form by [60 days from the date of mailing] or, if you decide to hire your own attorney, have your attorney return a consent to join form on your behalf by [60 days from the date of mailing]. You may return the completed form by mail in the enclosed, postage pre-paid envelope, by [60 days from the mailing].,

~~_____ Name~~
~~_____ Address~~
~~_____ Telephone~~
~~_____ Fax~~
~~_____ Email Address~~

or you may fax it to the Notice Administrator at (___) ___-____ or e-mail it to the Notice Administrator at _____@_____.com, provided that it is sent by the deadline. It may also be submitted via the Website at (WWW.xxxxxxxxxx.xxx)

If you have questions, you may contact counsel for plaintiffs at Tel: (914) 934-9200 or (212) 545-1199 or the Notice Administrator (___) ___-____.

## CONCLUSION

In conclusion, for the reasons discussed above:

(1) Plaintiffs' Proposed Notice (Dkt. 131-1) should be amended to (a) identify ETLs more specifically, (b) include defense counsel's contact information, and (c) conform with the Court's line edits shown above.

(2) The six Target stores in California at which Plaintiff Isais allegedly worked from time to time after June 28, 2014 shall be included in the Proposed Notice.

(3) Target's requests to modify Plaintiffs' description of the case and to add additional language regarding the right of collective members to choose their own counsel are denied.

(4) Plaintiffs' request for production of collective members' personal contact information to Plaintiffs' counsel is denied, but without prejudice to a future showing of necessity.

(5) Target shall provide the third-party administrator with the personal contact information of all collective members as described herein and notwithstanding the Court's September 30, 2020 Order, which is amended to the extent that it is inconsistent with this Order.

Within seven (7) days of the date of this Order, the parties shall submit for the Court's approval a further Revised Proposed Notice and Consent to Join form that complies with the directives herein.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 16, 2020
      Brooklyn, New York